UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRAD SANDEFUR,

            Plaintiff,

   v.

THOMAS J. DART, Sheriff of Cook County, et al.,

            Defendants.

No. 17 CV 2048

Judge Manish S. Shah

## ORDER

Defendants' motion to dismiss, [16], is granted. Counts I and II are dismissed without prejudice, as are the claims against the individual defendants in their individual capacities. Plaintiff has leave to file an amended complaint by August 25, 2017. Defendants' response to the amended complaint is due September 15, 2017. A status hearing is set for September 21, 2017 at 9:30 a.m.

## STATEMENT

Plaintiff Brad Sandefur worked in the Department of Corrections for over 25 years and then enrolled in the police academy. He was harassed and discriminated against at the academy due to his age and a physical disability, and he complained to the EEOC. He was reassigned to the Department of Corrections and, in retaliation for complaining, his requests for promotion were denied. He brings claims against Thomas J. Dart in both his individual and official capacities as Sheriff of Cook County, Cook County, and four individuals: Robert Egan, Nathan Camer, Dana Wright, and Jeffrey Lange.* Defendants Dart, Egan, Camer, Wright, and Cook County move to dismiss the claims against them for failure to state a claim.

*Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

---

* Defendant Jeffrey Lange has not yet appeared in this action.

(2007)). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). When analyzing a motion under Rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but a court need not accept legal conclusions or conclusory allegations. *Virnich*, 664 F.3d at 212 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009)). In addition to the allegations set forth in the complaint itself, a court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

*Facts*

Sandefur began working for the Sheriff of Cook County in the Department of Corrections in 1990. [1] ¶ 16. In 2011, he was diagnosed with osteoarthritis in his right knee and degenerative disc disease. [1] ¶¶ 2, 64. Due to intermittent pain from knees, he requested from the State of Illinois and was given a handicap placard, which he displays in his car at all times. [1] ¶¶ 67–70. In 2015, after decades of successful employment, Sandefur gained admission to the Cook County Sheriff's Police Department Training Academy to train as a police officer. [1] ¶¶ 23–24. But throughout the ten weeks he spent at the Academy, Sandefur was treated differently from the other recruits, who were all approximately twenty years younger than Sandefur. [1] ¶¶ 25–26. On his first day, defendant Jeffrey Lange, an instructor, noticed Sandefur's handicap placard. [1] ¶ 27. From that moment on, Lange and other instructors belittled Sandefur and made disparaging remarks related to his age and disability. [1] ¶¶ 29–30.

A couple of weeks later, defendant Nathan Camer, a lieutenant working for the Sheriff, forced Sandefur to sign a HIPAA release form. [1] ¶ 32. Sandefur assumed the release was merely a formality, but it was actually used to obtain medical records as part of an investigation into Sandefur's handicap placard. [1] ¶¶ 32–33. But that collection was incomplete—Camer failed to obtain certain relevant medical records that documented Sandefur's disabling condition. [1] ¶ 35. Sometime later, three unnamed investigators interrogated Sandefur, without a union representative or attorney present, and accused him of faking his disability. [1] ¶ 35.

On September 10, 2015, the day before Sandefur's graduation from the Academy, a human resources representative told him he was being reassigned to work as a correctional officer based on the results of an investigation by management and was not permitted to graduate. [1] ¶¶ 38–39, 41–42. Defendant Dana Wright, First Deputy Chief of Police and a final decision-maker regarding employee promotion decisions, approved of the reassignment, effectively denying Sandefur's

promotion to police officer. [1] ¶¶ 8, 40. He then filed a complaint with the EEOC, alleging discriminatory treatment based on his age and disability. [1] ¶ 44.

A few months later, he requested assignment to a "C.O. to P.O. class," which trains qualified correctional officers to be police officers. [1] ¶ 45. He was selected to take an admission test, but after passing the test, he was never informed of the class's start date. [1] ¶¶ 47–48. He was then told he was ineligible for the class, first because he had not reported to class on the start date, and then because of unidentified disciplinary issues. [1] ¶¶ 49–51. Defendant Robert Egan, Compliance Officer for the Sheriff, investigated Sandefur's removal from the Academy, and told him that the police had conducted a "management inquiry," but that "it does not rise to the level of discipline necessary to disqualify you from CO to PO." [1] ¶ 53.

Sandefur continued seeking promotions, but in December 2016, he received two letters denying his requests. [1] ¶¶ 55–60. The letters explained that he was disqualified from the promotional process due to a "Brady violation." [1] ¶¶ 55–60. Sandefur told Egan that he objected, and Egan responded by denying authorship of the letters. [1-4] at 2. Sandefur believes that the reasons given for denying him promotions are mere pretext, and that his career advancement is being impeded in retaliation for complaining to the EEOC.

*Analysis*

Sandefur brings claims against Cook County alone under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (Count I), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (Count II). He asserts claims under 42 U.S.C. § 1983 against all defendants for the deprivation of his constitutional rights to due process (Count III) and to equal protection (Count IV).

Defendants first argue that, because the Sheriff of Cook County is an independently elected official, Cook County cannot be vicariously liable for the actions of the Sheriff's office or the individual defendants working for that office. *See Moy v. County of Cook*, 159 Ill.2d 519, 526–30 (1994). They acknowledge, however, that Cook County has a duty to indemnify judgments against the other defendants. Sandefur agrees and clarifies that Cook County is named as a defendant only in its capacity as indemnitor for claims brought against the Sheriff's office. But Sandefur did not bring Counts I and II against Sheriff Dart or the Sheriff's office. The only named defendant in those counts is Cook County. The motion to dismiss with respect to Cook County is granted. Counts I and II are dismissed without prejudice. Sandefur must file an amended complaint naming an appropriate defendant for those claims, and Cook County may be named for indemnification purposes only.

The remaining arguments relate to whether the complaint alleges the personal involvement of individual defendants Dart, Camer, Wright, and Egan sufficient to state a claim under § 1983. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (explaining that individual liability under § 1983 requires a showing of "personal involvement in the alleged constitutional deprivation"). "Although direct participation is not necessary, there must at least be a showing that the [individual defendant] acquiesced in some demonstrable way in the alleged constitutional violation." *Id.* Supervisors may be liable if they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Sandefur concedes that his claims against Sheriff Dart in his individual capacity do not meet that standard. With respect to those claims, the motion to dismiss is granted. Sheriff Dart did not move to dismiss any claims filed against him in his official capacity; those claims remain.

The claims against Camer are dismissed. He forced Sandefur to sign a HIPAA release form, and that form was later used to access medical forms as part of an improper investigation into Sandefur's disability status. Beyond that, Camer is not alleged to have had any involvement in the investigation itself or in how the results of that investigation were used to justify Sandefur's ouster from the Academy or denials of his promotions. The complaint does not allege that Camer was the cause of or aware of any unconstitutional conduct. The motion to dismiss is granted with respect to claims against Camer.

The claims against Wright are dismissed, as well. Wright was a final decision-maker with respect to employee promotions and approved of Sandefur's reassignment, based on the results of the investigation into his handicap placard. The complaint does not allege that Wright knew that the investigation had been conducted improperly, but Sandefur argues that her knowledge may be inferred. Defendants argue that a report of the investigation, which is attached to the complaint, undercuts such an inference. That report, approved by Wright but written by a nonparty to this lawsuit, recommends reassignment based on the results of the investigation, which the report says was conducted by a different nonparty. According to the report, the investigation revealed that Sandefur had obtained his handicap placard under false pretenses and had been dishonest in explaining his need for the placard to investigators. The complaint does not allege that Wright was aware of any unconstitutional conduct or discriminatory intent when she approved of the report or Sandefur's reassignment, and Sandefur does not suggest that the report itself would have given her cause for concern. It would be unreasonable to infer from the allegations of the complaint the knowledge and acquiescence required to state a claim under § 1983. The motion to dismiss is granted with respect to claims against Wright.

4

Finally, the claims against Egan are dismissed for the same reasons. Egan told Sandefur that the investigation should not have disqualified him from the C.O. to P.O. class, and he was unhelpful when Sandefur objected to the notifications of disqualification that he received. Sandefur argues that Egan was aware of unconstitutional conduct and failed to take any effective remedial measures to stop it. "[U]nder certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). But the complaint does not allege that Egan was aware of any unconstitutional conduct, or that he could have provided a remedy, and such an inference would be unreasonable. The motion to dismiss is granted.

The complaint alleges the involvement of the individual defendants in the sequence of events leading to this lawsuit, and defendants do not dispute that it alleges discriminatory and retaliatory conduct, but the complaint stops short of alleging the individual defendants' involvement in the constitutional deprivations at issue. As a result, the claims against the individual defendants are dismissed without prejudice. Sandefur has leave to amend the complaint.

ENTER:

Date:   August 3, 2017

_____
Manish S. Shah
U.S. District Judge