**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRAD SANDEFUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHERIFF OF COOK COUNTY | ) | 17-CV-2048 |
| THOMAS J. DART, in his individual | ) | |
| and official capacity as Sheriff of | ) | |
| Cook County, Illinois; COUNTY | ) | |
| OF COOK, a unit of local | ) | |
| Government; ROBERT EGAN, | ) | |
| in his individual capacity; | ) | |
| NATHAN CAMER, in his individual | ) | |
| capacity; DANA WRIGHT, in her | ) | Jury Trial Demand |
| individual capacity; and JEFFREY | ) | |
| LANGE, in his individual capacity | ) | |
| | | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT

Plaintiff, Brad Sandefur ("Plaintiff"), by his attorney, Daniel Q. Herbert, brings this

Complaint against Defendants COOK COUNTY SHERIFF'S OFFICE, THOMAS DART, in his

individual and official capacities, COUNTY OF COOK, a unit of local government, ROBERT

EGAN, in his individual capacity, NATHAN CAMER, in his individual capacity, DANA

WRIGHT, in her individual capacity, and JEFFREY LANGE, in his individual capacity, states

as follows:

## NATURE OF THE ACTION

Plaintiff BRAD SANDEFUR brings this action to correct unlawful employment practices

on the basis of disability pursuant to Title I of the Americans with Disabilities Act of 1990, 42

U.S.C. 1201, et seq., and Title V, Section 503 of the Act, 42 U.S.C. 12203; for violations of the

Age Discrimination in Employment Act ("ADEA"), as amended, pursuant to 29 U.S.C. 626, et. seq.; for violations of his civil rights under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. 1983, and for violations of Plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. 1983.

## PARTIES

1. Brad Sandefur is a citizen of the United States who resides in Cook County, Illinois.

2. Plaintiff is a 57-year-old man, who suffers from degenerative disc disease/desiccation, sciatica, bipartite patella and osteoarthritis.

3. Plaintiff was hired by Cook County through the Sheriff's Office in or about February 1990. Plaintiff is currently an employee of the Sheriff's Office.

4. Defendant Cook County is a municipality incorporated under the laws of the State of Illinois. Cook County administers itself through departments, one of which is the Cook County Sheriff's Office ("Sheriff's Office"). At all relevant times, Defendant Cook County, through the Sheriff's Office, has been continuously engaged in an industry affecting commerce.

5. At all relevant times, Defendant SHERIFF OF COOK COUNTY, THOMAS DART ("Dart") served in the elected position of Sheriff of Cook County, Illinois. Dart was at all relevant times hereto the final decision maker, agent and policymaker in the Sheriff's Office. Defendant Dart is sued in his official and individual capacities.

6. At all relevant times, Defendant ROBERT EGAN, served as the Compliance Officer for the Defendant, Sheriff of Cook County, Thomas J. Dart.

7. At all relevant times, Defendant ROBERT EGAN was as a final policy maker and agent of the Defendant Sheriff of Cook County, Thomas J. Dart.

2

8.      At all relevant times, Defendant ROBERT EGAN was a superior officer and/or supervisor of the Plaintiff.

9.      At all relevant times, Defendant NATHAN CAMER, served as a lieutenant for the Defendant, Sheriff of Cook County, Thomas J. Dart and was a superior officer to Plaintiff.

10.     At all relevant times, Defendant NATHAN CAMER was a lieutenant, agent, and delegated as a final policy maker of the Defendant Sheriff of Cook County Thomas J. Dart.

11.     At all relevant times, Defendant NATHAN CAMER served in a supervisory role to the Plaintiff.

12.     At all relevant times, Defendant DANA WRIGHT, served as the First Deputy Chief of Police for the Defendant, Sheriff of Cook County, Thomas J. Dart and was a superior officer to Plaintiff.

13.     At all relevant times, Defendant DANA WRIGHT was the First Deputy Chief of Police and agent for the Defendant Sheriff of Cook County, Thomas J. Dart.

14.     At all relevant times, Defendant DANA WRIGHT served in a supervisory role to the Plaintiff.

15.     At all relevant times, Defendant JEFFREY LANGE, served as an instructor for the Defendant, Sheriff of Cook County, Thomas J. Dart's Training Academy.

16.     At all relevant times, Defendant JEFFREY LANGE, acted as an instructor and agent of the Defendant, Sheriff of Cook County, Thomas J. Dart.

17.     At all relevant times, Defendant, JEFFREY LANGE, was an instructor and held a supervisory role to Plaintiff.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §

3

1331 because the causes of action arise under 42 U.S.C. § 12101, *et seq*. and 42 U.S.C. § 1983. In addition, this Court has subject matter jurisdiction over Plaintiff's ADEA claim pursuant to 29 U.S.C. 626(c).

19.     This Court has personal jurisdiction over Defendant Sheriff of Cook County, Thomas J. Dart and his Office as the Sheriff's Office is an Illinois agency "doing business" in Illinois.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as all acts and omissions giving rise to these claims occurred in the Northern District of Illinois.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or about October 13, 2015. (Attached hereto as Exhibit 1).

22.     The EEOC issued Plaintiff a Right to Sue Letter on or about December 15, 2016, which was confirmed by the U.S. Department of Justice, Civil Rights Division (Attached hereto as Exhibit 2).

23.     This suit was timely filed within 90 days of Plaintiff's receipt of his Right to Sue Letter.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Employment with Defendant

24.     Plaintiff started working for the Sheriff's Office in or around February 1990 as a Deputy Sheriff/Correctional officer in the Department of Corrections.

25.     Despite being hired in 1990, Plaintiff did not attend the sheriff's academy until March 1991, where he graduated as valedictorian.

26.     Plaintiff successfully worked in the Department of Corrections within the

Sheriff's Department for a number of years.

27.     Starting in 1993, Plaintiff became a member of a specialized unit, the Special

Operations Response Team (S.O.R.T.). He was a member of S.O.R.T. for two years.

28.     In or around January 1996, Plaintiff became a certified Sheriff's Academy

Instructor.

29.     From 1990 to 1996, Plaintiff worked as a Deputy Sheriff/Correctional Officer.

30.     In or around December 1996, Plaintiff was promoted to Sergeant. Plaintiff has

worked as a Deputy Sheriff Sergeant in the Department of Corrections from 1996 to present.

**Plaintiff Attends Police Academy**

31.     During Plaintiff's almost three decades of successful employment in the

Department of Corrections, Plaintiff took and passed the test to attend the Academy to become a

Police Officer with the Sheriff's Department numerous times.

32.     In or around July 2015, Plaintiff was admitted to the Academy to train to become

a police officer in the Cook County Sheriff's Police Department.

33.     From Plaintiff's first day at the Academy, Plaintiff was treated differently from

the other recruits.

34.     On information and belief, Plaintiff was approximately twenty years older than

the other recruits in the Academy.

35.     On the first day at the Academy, the instructors inspected the vehicles of all the

recruits.  While inspecting Plaintiff's vehicle, Defendant-Instructor Jeffrey Lange ("Defendant

Lange") saw a handicap placard in Plaintiff's window.  Defendant Lange demanded to know

whose vehicle it was and upon being informed that it was on loan to plaintiff, exclaimed to the

entire class of recruits, "Can you believe they are sending handicapped motherfuckers to the

5

Academy?"

36.     Plaintiff admitted that the placard was his, but chose not to disclose any additional information regarding his disability at that time.

37.     Immediately upon hearing this, Defendant Lange and the other instructors at the Academy began harassing Plaintiff:

    a.  They told Plaintiff to take the elevator instead of the stairs up to the second floor because he "is handicapped."   Upon arrival at the second floor, the instructors belittled Plaintiff, forced him to run down the stairs to the basement and back up with his luggage, all while jeering at him in front of the rest of the recruits;

    b.  They repeatedly called out Plaintiff's disability, calling him "handicapped" and "old-timer."

38.     Throughout Plaintiff's ten (10) weeks at the Academy, Plaintiff's disability and age were repeatedly mentioned, often using derogatory language.

39.     A couple weeks into the Academy, Plaintiff was called into the lieutenant's office. The lieutenant insisted that Plaintiff write a "To/From" letter explaining any special accommodation needs for his disability.  Plaintiff responded that he was not requesting any accommodations.

40.     Shortly after, Plaintiff was again called into a meeting where Defendant Lieutenant Camer forced Plaintiff to sign a HIPAA release form. Plaintiff assumed that the HIPAA release form was a formality at the Academy in case there was a need for a treatment of some kind.

41.     Instead, Plaintiff's signed HIPAA release was used to investigate his handicap placard.

6

42.     Defendants requested Plaintiff's medical records from various medical providers under this ruse.

43.     At another time while Plaintiff was at the Academy, Plaintiff was called into a meeting with three Academy investigators.  These investigators interrogated Plaintiff regarding his disability and his handicap placard:

a.   They inquired as to Plaintiff's handicap;

b.   When Plaintiff told them that it was due to an intermittent condition diagnosed by his doctor, the investigators asked Plaintiff "if he had the doctor in his pocket?";

c.   The investigators accused Plaintiff of lying about his disability.  On information and belief, Defendant used the coerced HIPPA release form to obtain Plaintiff's medical records.  The medical records obtained were incomplete, and did not contain records from Dr. Gregory Drake at Core Orthopedics and Sports Medicine.  Because Defendants did not obtain these records, nor did they obtain records documenting medical conditions related to the issues addressed herein, they did not see the diagnosis from Dr. Drake of osteoarthritis, nor relevant diagnoses from other doctors.

d.   The investigators accused Plaintiff of filling out the required forms to apply for a placard himself;

e.   The investigators then accused Plaintiff of faking the disability because he mentioned that he also had some back problems.  When Plaintiff mentioned his back problems, the investigators insinuated that he lied about the osteoarthritis in his knee being the reason for his placard;

7

      f.   The investigators then accused Plaintiff of dishonesty in not demanding that the doctor change the diagnosis on the placard forms from osteoarthritis to back pain;

      g.   During this entire interrogation, Plaintiff was denied both a union representative and an attorney be present during the interrogation.

44.     Despite the harassment, discrimination, and constant threat of discipline for his alleged "dishonesty," Plaintiff excelled at the Academy, finishing the Academy term tenth out of twenty-nine recruits.

45.     During his tenure at the Academy, Plaintiff completed all required tasks, assignments, and tests to pass the Academy.

46.     On or about September 10, 2015, the day before Plaintiff's scheduled graduation from the Academy, Plaintiff's instructor informed Plaintiff that he had one hour to report to Human Resources. (Attached hereto as Exhibit 3).

47.     Upon arriving at Human Resources, Plaintiff was immediately informed that he was being reassigned to the jail as a correctional sergeant.

48.     Defendant Wright signed off on, and approved Plaintiff's reassignment.

49.     Plaintiff was not permitted to graduate with his academy class.

50.     Plaintiff was given no written explanation as to the reason for this reassignment. The only official explanation Plaintiff has been given for this reassignment is that it was a "management inquiry."

51.     This reassignment and denial of Plaintiff's graduation from the Academy resulted in Plaintiff being denied the promotion to Sheriff Police Officer to which Plaintiff was qualified and due.

52.     Shortly after Plaintiff's mistreatment at the Academy, Plaintiff filed an EEOC Charge alleging age and disability discrimination and harassment.

**Plaintiff's Denial of C.O. to P.O. Training**

53.     Upon being reassigned to the Department of Corrections, Plaintiff contacted Marie Rangel regarding Plaintiff being assigned to a "C.O. to P.O. Class" which trains certified correctional officers who meet specific qualifications to be trained as police officers.

54.     On or about December 3, 2015, Plaintiff was informed that he had been selected to take the P.O.W.E.R. test as the final step of the process to be admitted into the C.O. to P.O. class.

55.     Plaintiff reported to and passed the P.OW.E.R. test, and was informed that he would be contacted via email informing Plaintiff of when to report to the C.O. to P.O. training class.

56.     On or about December 14, 2015 at about 19:30, Plaintiff received information that the C.O. to P.O. class had begun.  Plaintiff was never contacted regarding reporting to the class.

57.     Plaintiff was subsequently informed that because he had not reported to class on the start date, he was ineligible to take the C.O. to P.O. class.

58.     On information and belief, this claim is inconsistent with the Illinois State Law Enforcement Training and Standards Board policy, which permits C.O. to P.O. participants to miss a certain number of hours of the class and still be eligible for completion. Plaintiff missing the first day would not disqualify him from completing the course so long as Plaintiff completed the required number of hours during the remainder of the course.

59.     Plaintiff was subsequently informed that he was "not qualified" for this class because of "discipline."  The letter did not indicate what discipline Plaintiff allegedly received.

60.     In addition, Marie Rangel, inaccurately alleged that Plaintiff was not certified by the State of Illinois as a Police Officer.   Plaintiff provided a letter from the Illinois Law Enforcement Training and Standards Board dated November 17, 2015 as proof of his certification.

61.     During this time, Defendant-Compliance Officer Robert R. Egan investigated Plaintiff's removal from the Academy, and concluded that the Sheriff's Police conducted a "management inquiry," but that "it does not rise to the level of discipline necessary to disqualify you from C.O. to P.O."

## Continued Retaliation of Plaintiff

62.     Since being reassigned to the Department of Corrections, Plaintiff continues to work as Sergeant at the Cook County Department of Corrections.

63.     During this time, Plaintiff's EEOC charge has been pending, and Plaintiff has been actively pursuing being reassigned to the Sheriff's Police Department or other promotional positions with the Cook County Sheriff's Office.

64.     On or about December 15, 2016, the EEOC issued Plaintiff a right to sue letter.

65.     On or about December 19, 2016, Plaintiff received a Notification of Disqualification disqualifying Plaintiff "from the promotional process for the position of Police Officer with the Sheriff's Police department" due to "discipline."  (Attached hereto as Exhibit 4).

66.     The alleged reason for this disqualification was a "Brady Violation."

67.     On or about December 19, 2016, Plaintiff received an Amended Notification of Disqualification, further explaining the discipline as "Discipline Explanation: Reference Sustained Discipline Lead to Promotional Demotion Reference Case #M12015-0073 (Brady Violation)".

68.     On or about December 27, 2016, Plaintiff received a second Notification of Disqualification disqualifying Plaintiff "from the promotional process for the position of Electronic Monitoring Sergeant with the Cook County Sheriff's Office Electronic Monitoring Unit" due to the same alleged "Brady Violation".

69.     Plaintiff has never been disciplined, nor received any hearing or other due process regarding any accusation of a "Brady Violation". Furthermore, Plaintiff did not receive any further explanation of what the alleged Brady Violation" is.

70.     On information and belief, Defendant is dredging up meritless false accusations from more than a year prior to continue to harass and discriminate against Plaintiff.[1]

**Plaintiff's Disability**

71.     In or about March 2011, Plaintiff reported to a doctor regarding right knee pain and cervical spine pain.

72.     Plaintiff was diagnosed with osteoarthritis in his right knee, and a C5-6 disc dessication in his back.

73.     Plaintiff's pain is intermittent and does not affect his ability to complete his work assignments.

74.     However, when Plaintiff's disability flares up, it affects one or more of Plaintiff's basic life functions, in particular affecting Plaintiff's ability to walk even short distances.

75.     On or about June 20, 2011, Plaintiff filed a Persons with Disabilities Certification for Plates or Parking Placard with the Illinois Secretary of State. This Certification was filled out and signed by Stephen Behnke, M.D., Plaintiff's physician.

---

[1] Plaintiff will be filing an Amended Charge with the EEOC including an additional charge of retaliation. Upon being issued a right to sue letter, Plaintiff will amend this Complaint or file suit and move to consolidate with the present case. (Attached hereto as Exhibit 5).

76.     This certification requested a placard for Plaintiff because of Plaintiff's osteoarthritis in his knees.

77.     Plaintiff leaves the placard in his vehicle at all times.

78.     Plaintiff's disability, while limiting, is intermittent. At no point has Plaintiff been unable to fulfill any of his duties or requirements as a Department of Corrections Officer.

79.     At no time was Plaintiff unable to successfully complete any of the physical tests or requirements at the Academy.

80.     At no time did Plaintiff request an accommodation or initiate the interactive process of requesting an accommodation from Defendant.

## COUNT I

### DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITY ACT (42 U.S.C. § 12112) against Defendant Sheriff of Cook County, Thomas J. Dart and Defendant Cook County as Indemnitor

81.     Plaintiff incorporates by reference and re-alleges, as if fully restated herein, the allegations in paragraphs 1 through 80 above.

82.     At all relevant times, Defendant Sheriff of Cook County, Thomas J. Dart was an "employer" as defined and codified in 42 U.S.C. § 12111(5).

83.     At all relevant times, Defendant Cook County as Indemnitor was a public entity as defined and codified in 42 U.S.C. § 12131(1)(A).

84.     At all relevant times, Plaintiff was an employee of Defendant Sheriff of Cook County, Thomas J. Dart as defined and codified in 42 U.S.C. § 12111(4).

85.     Plaintiff is a qualified individual with a disability and who is regarded as having a disability that substantially limits him in one or more major life activities.

86.     Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., makes it

unlawful for an employer to discriminate against an employee on the basis of an employee's disability, because the employer regards the employee as suffering from a disability, and/or because of the employee's record of a disability.

87.     Plaintiff suffers from intermittently debilitating back conditions, bipartite patella and osteoarthritis of his knee, conditions which have resulted in Plaintiff obtaining a handicap placard for his vehicle.

88.     At all relevant times to this cause of action, Plaintiff was regarded and/or perceived by Defendant, its agents, and/or employees, as an individual with a disability.

89.     The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

90.     Furthermore, the ADA prohibits employers from making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

91.     Defendant Sheriff of Cook County, Thomas J. Dart, by and through his duly authorized agents and employees, acting on behalf of Defendant and within the scope of their employment, intentionally discriminated against Plaintiff when, without limitation:

       a.   Defendant denied Plaintiff a promotion to Police Officer due to his disability and/or perceived disability;

       b.   Defendant removed Plaintiff from the Academy and reassigned Plaintiff to the Department of Corrections without due process due to his disability and/or

perceived disability;

c. Defendant denied Plaintiff C.O. to P.O. training due to his disability and/or perceived disability;

d. Defendant strongly suggested that Plaintiff file for an ADA accommodation, despite the fact that Plaintiff had not made any mention of his disability nor shown any signs of needing or wanting an accommodation;

e. Defendant misled Plaintiff into the reason for signing a HIPAA release form;

f. Defendant inquired of Plaintiff directly what his handicap placard was for, and conducted an investigation into Plaintiff's disability status;

g. Defendant inquired of Plaintiff's physicians what his handicap placard was for, and conducted an investigation into Plaintiff's disability status;

h. Defendant issued Plaintiff two Notifications of Disqualification, ("Brady Letters") due to Plaintiff's disability and/or perceived disability.

92. Each and every excuse Defendant Sheriff of Cook County, Thomas J. Dart has used regarding these actions as being based on Plaintiff's alleged dishonesty is merely pretextual for the true reason, namely the intentional discrimination by Defendant Sheriff of Cook County, Thomas J. Dart against Plaintiff based on his disability and/or perceived disability.

93. Plaintiff demonstrated an ability to meet all job requirements by passing each and every physical fitness test in the academy.

94. As evidenced by Plaintiff's successful completion of all the required tasks and tests at the Academy, Plaintiff is qualified for the position of Police Officer.

95. Defendant's ongoing harassment of Plaintiff continues until today.

96. Plaintiff has suffered actual and consequential damages in amounts that will be

proven at trial as a result of Defendant's discrimination of him.

97.     The conduct of Defendant was extreme, such that punitive damages are warranted in an amount sufficient to punish this Defendant and deter others from like misconduct.

98.     Plaintiff is entitled to the recovery of attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

<u>**COUNT II**</u>

**<u>DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 621 *et seq.*</u>**
**(against Defendant Sheriff of Cook County, Thomas J. Dart and County of Cook as Indemnitor)**

99.     Plaintiff incorporates by reference and re-alleges, as if fully restated herein, the allegations in paragraphs 1 through 80 above.

100.    Plaintiff is a 57-year-old individual.  As such, he is protected by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

101.    At all relevant times, Defendant Sheriff of Cook County, Thomas J. Dart was and is an "employer" within the meaning of the ADEA.

102.    At all relevant times, Plaintiff was and is employed by Defendant Sheriff of Cook County, Thomas J. Dart and is an "employee" within the meaning of the ADEA.

103.    Defendant Sheriff of Cook County, Thomas J. Dart violated the ADEA through its repeated acts of discrimination based on Plaintiff's age, as alleged herein.

104.    Defendant Sheriff of Cook County, Thomas J. Dart repeatedly denied Plaintiff promotions, promotional opportunities, training, and subjected Plaintiff to ongoing harassment based on Plaintiff's age.

105.     Each and every excuse Defendant Sheriff of Cook County, Thomas J. Dart has used regarding these actions as being based on Plaintiff's alleged dishonesty is merely pretextual

15

for the true reason, namely the intentional discrimination by Defendant Sheriff of Cook County

against Plaintiff based on his age.

106.    Defendant Sheriff of Cook County, Thomas J. Dart acted intentionally and in bad

faith when denying Plaintiff promotions, promotional opportunities, training, and subjected

Plaintiff to ongoing harassment based on his age.

107.    Plaintiff suffered actual and consequential damages in amounts that will be

proven at trial as a result of Defendant Sheriff of Cook County, Thomas J. Dart's conduct alleged

herein.

108.    Defendant Sheriff of Cook County, Thomas J. Darts' conduct has resulted in

damages to Plaintiff including but not limited to lost wages and benefits, future pecuniary losses,

attorneys' fees pursuant to 29 U.S.C. § 626(b), and other damages.

## COUNT III

### VIOLATION OF PLAINTIFF'S FOURTHEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW IN VIOLATION OF 42 U.S.C. § 1983
#### (Against All Defendants)

109.    Plaintiff incorporates by reference and re-alleges, as if fully restated herein, the

allegations in paragraphs 1 through 80 above.

110.    The Fourteenth Amendment to the United State Constitution guarantees the rights

of due process of law to all citizens.

111.    As a citizen of the United States and the State of Illinois, and as an employee of a

public employer, Plaintiff enjoyed the constitutional guarantee not to be deprived of a liberty

interest without Due Process of Law. As a matter of law, Plaintiff's liberty rights included the

right not to be falsely accused of any acts or omissions that would be damaging to Plaintiff's

professional reputation.

112.    Also as a citizen of the United States and the State of Illinois, and as an employee of a public employer, Plaintiff enjoyed the constitutional guarantee not to be deprived of a property interest without Due Process of Law. As a matter of law, the Plaintiff's property interests included the right not to be deprived of his public employment in ways that would violate the employer's established policies or established state and federal law.

113.    Defendant issued Plaintiff two "Brady Letters" (on December 19, 2016 (the Amended Letter) and December 27, 2016). These letters accused Plaintiff of dishonesty and alleged discipline based on dishonesty, and disqualify Plaintiff from promotional opportunities.

114.    Plaintiff inquired about the "Brady Violations" and Robert Egan, as agent of Defendant Sheriff of Cook County, Thomas J. Dart denied authorship of the letter; denied Plaintiff an investigation into the alleged "Brady Violations"; and, discounted Plaintiff's objections to the allegations of "Brady Violations".

115.    Allegations of dishonesty have never been formally brought against Plaintiff.

116.    Plaintiff has never been accused of a "Brady Violation" before these letters.

117.    Plaintiff has not received or participated in any hearing or due process regarding alleged "Brady Violations" or dishonesty of any kind.

118.    Furthermore, on information and belief, the Defendant, Sheriff of Cook County, Thomas J. Dart's Office failed to conduct a thorough investigation into the false, informal allegations of dishonesty brought by Academy instructors against Plaintiff.

119.    Nathan Camer, a lieutenant of the Sheriff's Department of Cook County and agent for the Defendant, Sheriff of Cook County, Thomas J. Dart forced Plaintiff to sign a HIPAA release form after misrepresenting to Plaintiff the purpose for the release.

120.    Further, Nathan Camer, a lieutenant of the Sheriff's Department of Cook County

17

and agent for the Defendant, Sheriff of Cook County, Thomas J. Dart in his misrepresentation did not provide Plaintiff with proper notice regarding the investigation into his medical records and handicap placard in direct violation of Plaintiff's due process rights.

121. Plaintiff believed that the HIPAA release form was merely a formality.

122. A thorough investigation regarding Plaintiff's handicap placard would have definitively proven that Plaintiff engaged in no dishonesty in regards to obtaining his placard. Further, a thorough investigation regarding Plaintiff's handicap placard would have uncovered dishonesty on the part of the Academy instructors/investigators who deceived Plaintiff into providing a HIPAA release so that Defendant could unlawfully investigate Plaintiff's handicap placard and disability status.

123. Rather than engage in a thorough investigation of these matters, Dana Wright, First Deputy Chief of Police and an agent of the Sheriff of Cook County, Thomas J. Dart reassigned Plaintiff to the Department of Corrections, but took no further action against Plaintiff for more than fifteen (15) months.

124. In fact, in December 2015, Compliance Officer Egan, as an agent of the Defendant, Sheriff of Cook County, Thomas J. Dart stated that the investigation into the incident that led to Plaintiffs reassignment "did not rise to the level of discipline," and at no point was there any allegation of dishonesty brought to Plaintiff's attention.

125. As a result of these "Brady Letters", Plaintiff's employment with the Cook County Sheriff's Office, or any law enforcement office in the country, is seriously threatened as "Brady" allegations go into a law enforcement officers' personnel file, and make such officers vulnerable to attack on the witness stand.

126. The result of such "Brady Letters", is often a drawn-out process of terminating

law enforcement officers, without due process.

127.    On information and belief, the issuance of these "Brady Letters" to Plaintiff were pretextual with the intent to remove Plaintiff from his employment with Defendant, and in retaliation for Plaintiff's complaint to the EEOC (and resultant issuance of his Right to Sue Letter by the EEOC) and continued efforts to rectify the false accusations lodged against him by the Academy instructors.

128.    The actions of Defendant Sheriff's Office were committed and condoned by those with final policy making authority and/or were delegated with final policy making authority and acting as agents for the Defendant, Sheriff of Cook County, Thomas J. Dart, including Defendants Dart, Egan, Camer, Wright and Lange, and other command staff.

129.    At all relevant times, Defendants acted under the color of state law.

130.    The actions of Defendants against Plaintiff violate his due process rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

131.    Defendants' conduct in issuing the "Brady Letters" constitutes a continuing violation of 42 U.S.C. § 1983.

132.    Defendants' conduct as alleged herein was an intentional disregard of Plaintiff's rights.  Therefore, punitive damages are appropriate and should be awarded to punish the Defendant and deter future misconduct.

<u>**COUNT IV**</u>

<u>**DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE**</u>
<u>**42 U.S.C. § 1983**</u>
**(against all Defendants)**

133.    Plaintiff realleges and incorporates by reference paragraphs 1-80 above as if fully set forth herein.

134. At all times relevant hereto, Defendants acted as employers, agents, supervisors, and final policymakers for the Sheriff's Office.

135. The conduct of the Defendants, specifically the practice of age discrimination in the promotion, promotional opportunities and training of officers, was and became the custom and practice of the Defendant, Sheriff's Office.

136. Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment for promoting younger less-qualified candidates for promotions, promotional opportunities, and training over Plaintiff. In addition, Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment by denying him promotions, promotional opportunities, and training because of Plaintiff's age, and by knowingly failing to protect Plaintiff from such treatment.

137. At all relevant times, Defendants acted under the color of state law.

138. The actions of Defendants against Plaintiff violate his equal protection right to be free from discrimination under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

139. Defendants' actions were not rationally related to any legitimate government interest or objective. Moreover, no rational basis exists for the disparate treatment of Defendants' employees on the basis of age.

140. Defendants' actions have caused Plaintiff damages including but not limited to great mental anguish, humiliation, emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, attorney's fees, and other damages.

20

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brad Sandefur, by his attorneys, prays for judgment in his favor and against the Defendants in amounts to be determined at trial as follows:

A.  Compensatory damages sufficient to make the Plaintiff whole for all past, present, and future economic or monetary losses that he has and will sustain due to the discrimination he faced, to the fullest extent available under each count of his complaint, in amounts to be determined at trial;

B.  Compensatory damages sufficient to make the Plaintiff whole for all past, present, and future non-economic or non-monetary losses that he has and will sustain due to the discrimination he faced, such as emotional and physical distress, to the fullest extent available under each count of his complaint, in amounts to be determined at trial;

C.  Punitive damages against Defendant to the fullest extent available under each count of his complaint, in amounts that are sufficient to punish the Defendant and deter others from like misconduct, to be determined at trial;

D.  Costs of suit, including reasonable attorneys' fees;

E.  Such other and further relief as the Court deems just, proper, and equitable.

## **JURY DEMAND**

Plaintiff, hereby demands a trial by jury in the above-entitled matter.

August 25, 2017

Respectfully submitted,

BRAD SANDEFUR

By: _/s/ Daniel Q. Herbert_____
     *One of Plaintiff's Attorneys*

Daniel Q. Herbert, #6273940
The Law Offices of Daniel Q.
Herbert & Associates
206 S. Jefferson, Suite 100
Chicago, IL 60661
office: 312-655-7660
fax: 312-655-7661
dan.herbert@danherbertlaw.com

Gary D. Abrams
Law Offices of Gary D. Abrams & Associates
55 W. Monroe Street, 12th Floor
Chicago, IL 60603
Office: 312-263-4085
Gda44@comcast.net