# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRAD SANDEFUR,<br><br>        Plaintiff,<br><br>   v.<br><br>SHERIFF OF COOK COUNTY THOMAS J. DART, in his individual and official capacity as Sheriff of Cook County, Illinois; COUNTY OF COOK, a unit of local Government; ROBERT EGAN, in his individual capacity; NATHAN CAMER, in his individual capacity; DANA WRIGHT, in her individual capacity; and JEFFREY LANGE, in his individual capacity,<br><br>        Defendants. | No. 17 C 2048<br><br>Judge Manish S. Shah |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Dated: January 3, 2019

Respectfully submitted,

**KIMBERLY M. FOXX**
Cook County State's Attorney

*/s/ Miguel E. Larios*
MIGUEL E. LARIOS
Assistant State's Attorney
Conflict Counsel Unit
Cook County State's Attorney's Office
69 West Washington Street, Suite 2030
Chicago, Illinois 60602
(312) 603-1434
Miguel.Larios@cookcountyil.gov

*Counsel for Defendants*
*Thomas Dart and Cook County*

Defendants, Thomas Dart ("Dart") and Cook County, Illinois ("Cook County") (collectively, the "Defendants"), by their attorney, Kimberly M. Foxx, Cook County State's Attorney, through her Assistant State's Attorney, Miguel E. Larios, pursuant to Fed. R. Civ. P. 56, and for their Memorandum of Law in Support of their Motion for Summary Judgement, states as follows:

## INTRODUCTION

Plaintiff Brad Sandefur ("Plaintiff") is a Deputy Sheriff Sergeant in the Cook County Department of Corrections ("CCDOC"). (Defendants' Local Rule 56.1 Statement of Facts ("DSOF"), at ¶¶ 1, 11. The DSOF was filed concurrently with this memorandum). In 2015, Plaintiff applied for and was admitted to the Sheriff's Police Academy (the "Academy"), but was re-assigned back to the CCDOC after he gave false and inconsistent statements to his superiors during an investigation. (DSOF, at ¶¶ 31-32, 38-61). Plaintiff's First Amended Complaint (the "Complaint") asserts four claims against Defendants for various alleged violations including: (1) the Americans with Disabilities Act, 42 U.S.C. § 12112; (2) the Age Discrimination in Employment Act, 29 U.S.C. § 621; (3) the Due Process Clause, 42 U.S.C. § 1983; and (4) the Equal Protection Clause, 42 U.S.C. § 1983. (Dkt. 24). Plaintiff names Thomas J. Dart, the Sheriff of Cook County as one defendant, and Cook County as another.[1] Because Plaintiff lacks admissible evidence to support any of the aforementioned claims, Defendants are entitled to summary judgment in their favor.

---

[1] On February 2, 2018, this Court entered an Order dismissing Count II as to Defendant Dart individually. (Dkt. 40). The Court also dismissed Counts III and IV as to Defendants Dart, Camer, Egan, and Wright in their individual capacities. (Dkt. 40). Defendants Camer, Egan, and Wright were also terminated as parties to this case. (Dkt. 40). Therefore, Dart and Cook County are the only remaining defendants.

# STATEMENT OF UNDISPUTED MATERIAL FACTS THAT ENTITLE DEFENDANTS TO SUMMARY JUDGMENT

In July 2015, Plaintiff was admitted to the Academy to train to become a member of the Cook County Sheriff's Police Department. (DSOF, at ¶¶ 31-32). At the Academy, Plaintiff was a Probationary Recruit. (DSOF, at ¶ 33). The probationary period lasts for one year starting from when a person enters the academy. (DSOF, at ¶ 33). Recruits in the Academy, such as Plaintiff, are at-will employees without any union protection. (DSOF, at ¶ 34). Honesty and truthfulness is a requirement for police recruits in the Academy. (DSOF, at ¶ 60).

On the first day of the Academy (July 6, 2015), an inspection was conducted of all recruits' equipment, vehicles, and attire. (DSOF, at ¶¶ 32, 36). During this inspection, Plaintiff did not have his driver's license and had a handicap placard (the "placard") displayed in his vehicle. (DSOF, at ¶¶ 38, 42). It was brought to Sgt. David Cammack's attention that the placard was displayed on Plaintiff's vehicle. (DSOF, at ¶ 38). Plaintiff was asked if it was his handicap placard. (DSOF, at ¶ 40). In response, Plaintiff first claimed that the placard belonged to him. (DSOF, at ¶ 39). Plaintiff then claimed that the placard belonged to his wife. (DSOF, at ¶ 39). Plaintiff also admitted that he used his wife's placard on occasion. (DSOF, at ¶ 39). Next, Plaintiff claimed that he used the placard because he had a disability: a bad knee or bad back. (DSOF, at ¶ 39). Plaintiff did not appear certain of either statement. (DSOF, at ¶ 39). Despite using the placard, Plaintiff claimed that he was able to perform the duties of a police officer. (DSOF, at ¶ 39). The Human Resources Division of the Sheriff's Office was contacted, and Plaintiff was asked if he was requesting any special accommodations. (DSOF, at ¶ 43). Plaintiff did not request any special accommodations. (DSOF, at ¶ 43). Despite the placard, Plaintiff claimed that he was able to perform the duties of a police officer. (DSOF, at ¶ 39).

Sergeant John Sullivan ("Sgt. Sullivan") was later assigned to investigate the incident involving Plaintiff and his conflicting explanations regarding the placard. (DSOF, at ¶ 55). The placard certification indicates that the placard was given due to Plaintiff's knee condition. (DSOF, at ¶ 68). However, when questioned, Plaintiff stated that he should have received the placard based on his back condition, rather than his knee condition. (DSOF, at ¶ 68). He advised his doctor that he had incorrectly filled out the application for the placard. (DSOF, at ¶ 68). Plaintiff submitted the application to the Secretary of State, despite the error. (DSOF, at ¶ 68). Once he received notice that his application for a placard was approved, Plaintiff made no effort to notify the Secretary of State that his placard was issued for the wrong medical condition, or that his application was incorrect. (DSOF, at ¶ 68). When he renewed the placard, he made no effort to change or correct the application. (DSOF, at ¶ 68).

At the conclusion of the investigation, Sgt. Sullivan found multiple sustained policy violations with regards to Plaintiff. (DSOF, at ¶ 56). Sgt. Sullivan recommended that Plaintiff be removed from the Academy and sent back to his previous assignment within the CCDOC. (DSOF, at ¶ 56). In Sgt. Sullivan's summary report, he found that Plaintiff made multiple inconsistent statements during the course of the investigation. (DSOF, at ¶ 57). In light of Plaintiff's multiple inconsistent statements, it was Sgt. Sullivan's position that Plaintiff had engaged in dishonesty or untruthfulness. (DSOF, at ¶ 61).

The underlying policy violation that resulted in Plaintiff's removal from the Academy was his untruthful conduct, not any medical condition. (DSOF, at ¶ 49). Based upon Sgt. Sullivan's findings, the charges relating to Plaintiff's inconsistent statements were sustained. (DSOF, at ¶¶ 56-59). As a result, Plaintiff was returned to the CCDOC. (DSOF, at ¶ 59). Although Plaintiff could have received up to a three-day suspension as a result of this

investigation, he was not suspended. (DSOF, at ¶ 59). Plaintiff's false and inconsistent statements alone were sufficient to establish that Plaintiff failed to meet the requirements for the position of Police Recruit. (DSOF, at ¶ 60). Indeed, police officers are expected to provide truthful statements in connection with law enforcement investigations. (DSOF, at ¶ 60).

After Plaintiff was removed from the Academy, he applied to a different program, the the CO to PO training class. (DSOF, at ¶ 70). However, Plaintiff was not permitted to attend the CO to PO training class for disciplinary reasons. (DSOF, at ¶ 70). Plaintiff has admitted that he does not believe that he was disqualified from Correctional Officer to Police training class or denied promotion to sergeant due to his age. (DSOF, at ¶¶ 62, 66). Plaintiff further admitted his belief that he was not disqualified from later being promoted to Electronic Monitoring Sergeant due to his alleged disability or his perceived disability. (DSOF, at ¶ 63).

## ARGUMENT

**A.  Venue and Jurisdiction Are Proper.**

Venue is proper in the Northern District of Illinois because all alleged acts and omissions giving rise to Plaintiff's claims occurred within this District. (Dkt. 24, at ¶ 20). The Court has subject matter jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are purportedly brought pursuant to federal laws. (Dkt. 24, at ¶ 18).

**B.  Summary Judgment Standard.**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at

4

the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A mere scintilla of evidence" in support of the non-movant's position is insufficient (*Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997)); a party opposing summary judgment must "present definite, competent evidence to rebut the motion." *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott*, 550 U.S. at 380-81.

**C.     Plaintiff Cannot Establish The Elements of His ADA Claim (Count I).**

Under Title I of the ADA, 42 U.S.C. § 12112(a), Plaintiff is required to prove that: (1) he is "disabled"; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Gogos v. AMS Mech. Sys.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (citing *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008)). Defendants are entitled to summary judgment in their favor on Count I because any actions taken regarding Plaintiff were not done <u>*because of*</u> any disability, but instead because of his repeated dishonesty.

*1.     There Is No Evidence of Plaintiff's Disability.*

As an initial matter, there is no evidence in the record that Plaintiff is in fact disabled. On that basis alone, Plaintiff cannot sustain an ADA claim. *See Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998) (conclusory and self-serving allegations unsupported by the record fail to preclude summary judgment). There is no evidence in the record that Plaintiff suffered any impairment that would prevent him from graduating, or that he could not physically perform the job requirements necessary to be a Sheriff's police officer while he was at the Academy. In fact,

5

Plaintiff cannot identify any way his major life activities were impaired. As such, Defendants are entitled to summary judgment on Plaintiff's ADA claim.

2. *Any Actions Taken Against Plaintiff Were Not Because of His Disability.*

To the extent that Plaintiff argues that his removal from the Academy following repeated false and inconsistent statements to superior officers constitutes an adverse employment action, Plaintiff still cannot point to any admissible evidence that such an action was done due to or because of his alleged disability. On the contrary, the investigative summary is clear that Plaintiff was removed from the Academy for making false statements during a law enforcement investigation. (DSOF, at ¶¶ 39, 49, 60-61). Additionally, there is no indication those who decided Plaintiff should go back to the CCDOC believed Plaintiff was disabled. Indeed, Lieutenant Nathan Camer ("Lt. Camer"), a supervisor at the Academy, specifically testified in his deposition that he inquired about whether Plaintiff had requested any special accommodations because he wanted to make sure that Plaintiff "is afforded every opportunity for him to pass the academy." (DSOF, at ¶¶ 43-44). In fact, Plaintiff had never made any accommodation requests. (DSOF, at ¶ 43). Instead, the undisputed record is clear that Plaintiff was removed from the Academy as a result of an investigation that found that he made multiple false and inconsistent statements. (DSOF, at ¶ 39-61).

**It is axiomatic that the Sheriff's Police Department (and any police department for that matter) has a strong, legitimate interest in ensuring that its officers are honest and truthful.** *See, e.g., United States v. Gould*, 983 F.2d 92, 94 (7th Cir. 1993) (noting that police officers occupy a position of public trust); UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL, § 3B1.3 (sentencing guideline for defendants who "abused a position of public or private trust"); *Vodak v. City of Chi.*, 624 F.Supp.2d 933, 953 (N.D. Ill. 2009), *reversed*

6

*on other grounds*, 639 F.3d 738 (7th Cir. 2011) (noting that "Chicago Police Department officers are expressly forbidden to make false reports and are required to communicate accurate and factual accounts of occurrences of public interest."); *McDonald v. Metro-North Commuter R.R. Div. of Metro. Transit Auth.*, 565 F. Supp. 37, 40-41 (S.D.N.Y. 1983) (state has compelling interest in maintaining honesty and integrity of police officers including disciplining police officers for false statements); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (requiring evidentiary hearing under certain circumstances when a showing is made that an officer's false statement was included in an affidavit for a warrant).

Defendants have clearly articulated a legitimate non-discriminatory reason for Plaintiff's removal from the Academy – his own dishonesty. (DSOF, at ¶ 39-61). Plaintiff claims that this reason is "merely pretextual" (dkt. 14, at ¶ 92), but he has no evidence to show that his removal was "more likely than not motivated by a discriminatory reason." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). To the contrary, Plaintiff readily admits that he was not disqualified from the Correctional Officer to Police Officer training class due to his age. (DSOF, at ¶ 66). In sum, Plaintiff's own admissions negate the very claims he asserts in his Complaint.

"An employer's genuinely held belief is not pretextual even if it is mistaken." *Szymanska v. Abbott Labs.*, No. 93 C 3033, 1994 U.S. Dist. LEXIS 3830, *35 (N.D. Ill. Mar. 26, 1994) (citing *Billups v. Methodist Hosp. of Chi.*, 922 F.2d 1300, 1304 (7th Cir. 1991)). "So long as [the employer] honestly believes [its proffered] reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (citations omitted). Here, Plaintiff has failed to show that Defendants' proffered legitimate, non-discriminatory reason for removing him from the Academy is false or dishonest. He cannot carry his burden of showing pretext by making

7

bare allegations or by merely disagreeing with Defendants' final decision. For these reasons, Defendants are entitled to summary judgment in their favor.

**D.      Plaintiff Cannot Establish the Elements of His ADEA Claim (Count II).**

To establish a prima facie case of age discrimination, Plaintiff must show that (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside of the protected class more favorably. *Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 693 (7th Cir. 2014). "To prevail on an ADEA claim, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Guinto v. Exelon Generation Co., LLC*, 341 Fed. Appx 240, 245 (7th Cir. 2009) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (internal quotation marks omitted)). Thus, Plaintiff must show that age discrimination was *the* reason (as opposed to one of many reasons), and the burden always remains with him to do so. *Id.*

As an initial matter, Plaintiff testified that he does not believe that he was disqualified from the Correctional Officer to Police Officer training class due to his age. (DSOF, at ¶ 66). That admission alone is fatal to Plaintiff's ADEA claim. Additionally, Defendants are entitled to summary judgment in their favor on Count II for two reasons. First, Plaintiff's dishonesty prevented him from performing his job satisfactorily. Second, no similarly situated employee was treated more favorably.

*1.      Plaintiff's Acts of Repeated Dishonesty and Conflicting Explanations Prevented Him From Performing His Job Satisfactorily.*

Defendants have offered a legitimate non-discriminatory reason for Plaintiff's removal from the Academy – his own dishonesty. Plaintiff was asked about a placard and he claimed that the placard belonged to him. (DSOF, at ¶ 39). He then changed his story and claimed that the placard belonged to his wife. (DSOF, at ¶ 39). He changed his story yet again and admitted that

8

he used his wife's placard on occasion. (DSOF, at ¶ 39). He next claimed that he used the placard because he had a disability, but could not be certain as to whether his disability involved his knee or his back. (DSOF, at ¶ 61). Sgt. Sullivan was assigned to investigate the matter and found multiple sustained policy violations with regards to Plaintiff. (DSOF, at ¶¶ 55-57). Sgt. Sullivan recommended that Plaintiff be removed from the Academy and sent back to his previous assignment within the CCDOC. (DSOF, at ¶ 56). In light of Plaintiff's multiple inconsistent statements, it was Sgt. Sullivan's finding that Plaintiff had engaged in dishonesty or untruthfulness. (DSOF, at ¶ 61). The underlying issue with Plaintiff was his untruthful conduct, not an alleged medical condition. (DSOF, at ¶ 49). Based upon Sgt. Sullivan's findings, the allegations regarding Plaintiff's inconsistent statements were sustained by the Sheriff's Office. (DSOF, at ¶ 59). As a result, Plaintiff was returned to the CCDOC. (DSOF, at ¶ 59).

Plaintiff cannot establish that his performance was satisfactory prior to his removal from the Academy because he was dishonest and violated Defendants' policy. *See Jean v. Walgreen Co.*, 887 F. Supp. 1007, 1011 (N.D. Ill. 1994) (granting summary judgment to employer when employee was dismissed for dishonesty and violation of company policy and employee failed to produce evidence of pretext). For this reasons, Defendants are entitled to summary judgment.

    2.    *No Similarly-Situated Employee Was Treated More Favorably.*

Under the ADEA, in order to survive a motion for summary judgment, Plaintiff must establish a *prima facie* case of discrimination. *See Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). The parties do not dispute that Plaintiff is over forty years of age. (Dkt. 24, at ¶ 100). However, there is no evidence in the record to support Plaintiff's claim that similarly-situated, substantially younger employees were treated more favorably. *See Wade v. Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001). There is no evidence in the record to create a

dispute of material fact regarding whether Defendants treated similarly-situated employees outside of Plaintiff's protected group more favorably under the circumstances.[2] Because Plaintiff failed to carry his evidentiary burden of establishing favorable treatment to similar-situated employees, he has similarly failed to establish a prima facie case of discrimination under the ADEA. Accordingly, summary judgment in favor of Defendants should be granted.

**E.     Plaintiff Cannot Establish the Elements of His Due Process Claim (Count III).**

The only claims that remain against Defendant Dart in Counts III and IV are official capacity claims. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). "Pursuant to *Monell*, [Defendant] Dart may be held liable in his official capacity only if an official policy or custom caused the alleged constitutional violation." *Dawson v. Dart*, No. 11 C 7300, 2018 U.S. Dist. LEXIS 82902, *8-9 (N.D. Ill. May 16, 2018) (Durkin, J.); *see also Monell v. Dept. of Social Services,* 436 U.S. 658, 694 (1978). Defendants are entitled to summary judgment on Count III for two reasons. First, Plaintiff has no property interest in his at-will employment, and thus is not entitled to any additional procedural protection under the Due Process Clause. Second, Plaintiff has no evidence to support a *Monell* claim against Defendant Dart.

*1.     Plaintiff Has No Property Interest In His At-Will Employment.*

"It is settled that, absent legislative, administrative or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." *Willecke v. Bingham*, 662 N.E.2d 122, 125-26 (Ill. App. 1996) (citing *Levin v. Civil Service Comm'n*, 288 N.E.2d 97 (Ill. 1972)). "Thus, the public

---

[2] Although Plaintiff did testify that he believed that employees younger than him did receive the Sheriff's Police Officer position, he could not identify those individuals. (DSOF, at ¶ 67).

10

employee has no property interest in continued employment so as to trigger Federal or State due process protections. *Willecke*, 662 N.E.2d at 125-26 (citing *Levin*, 52 Ill.2d at 521; *Hohmeier v. Leyden Community High Schools District 212*, 954 F.2d 461, 463-65 (7th Cir. 1992) (affirming summary judgment in favor of employer because employee had no property interest to continued employment)). The lack of a protected property interest is fatal to Plaintiff's due process claim. *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1002 (7th Cir. 2008) (citing *Zorzi v. County of Putnam*, 30 F.3d 885, 894 (7th Cir. 1994)).

Plaintiff bears the burden of proving that a property interest entitled to the Fourteenth Amendment's procedural protection exists. *Petru v. City of Berwyn*, 872 F.2d 1359, 1361 (7th Cir. 1989). But Plaintiff cannot identify any legislative, administrative, or contractual provision granting him a property interest in his employment. Further, he is "currently an employee of the Sheriff's Office." (Dkt. 24, at ¶ 3). Thus, his alleged property right to employment is not even implicated in this matter. Without a property interest in Plaintiff's at-will employment, there is no additional process that is owed to him. Consequently, Defendants are entitled to summary judgment in their favor.

    2.    *Plaintiff Has No Evidence To Support His* Monell *Claim Against Defendant Dart.*

Here, Plaintiff cannot proceed on his *Monell* claim because he did not suffer a constitutional deprivation as a result of an official policy, custom or practice of Defendant Dart's Office. To establish municipal liability under Section 1983, "a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citation omitted). An official policy or custom can be established by any of the following: "(1) an express policy that causes a constitutional deprivation when

enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (citation omitted). "[B]are allegations" of an unidentified policy or custom are insufficient. *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013).

In this case, Plaintiff has no evidence to support any policy or practice that was the "moving force" behind the alleged deprivation of his constitutional rights. As argued *infra*, Plaintiff is an at-will employee and thus is not entitled to any additional process under the Fourteenth Amendment's Due Process Clause. With regard to any policy claim, Plaintiff "must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). While there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, it is clear that the alleged conduct must have occurred more than once, or even three times. *See Arita v. Wexford Health Sources, Inc.*, No. 15 C 1173, 2016 U.S. Dist. LEXIS 150106, *3 (N.D. Ill. Oct. 31, 2016) (Wood, J.); *Winchester v. Marketti*, No. 11 C 9224, 2012 U.S. Dist. LEXIS 82761, *4 (N.D. Ill. June 8, 2012) (Zagel, J.) ("Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity.").

Plaintiff cannot identify a single written or unofficial policy to support his claim. While Plaintiff's Complaint makes general and conclusory allegations that Defendants violated Plaintiff's rights, he cannot come forth with any admissible evidence that even suggests that these purported "practices" occurred outside of Plaintiff's own experience. As such, his *Monell* claim fails. *See Karney v. City of Naperville*, No. 15 C 4608, 2015 U.S. Dist. LEXIS 143407,

*12 (N.D. Ill. Oct. 22, 2015) (dismissing *Monell* claims where the allegations related solely to plaintiff's individual experience); *see also Arita, Winchester supra*.

Moreover, Plaintiff cannot succeed on a *Monell* claim unless there is a finding of liability on the underlying substantive claim. *See City of Los Angeles v. Heller*, 475 U.S. 766, 799 (1986). "[N]either [*Monell*], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Here, Plaintiff suffered no injury as a result of Defendants' actions or inactions. Based upon Plaintiff's failure to adequately support his *Monell* claim with evidence of an unconstitutional policy or practice, Defendants are entitled to summary judgment in their favor.

**F.    Plaintiff Cannot Establish the Elements of His Equal Protection Claim (Count IV).**

For his equal protection claim, Plaintiff can seek relief pursuant to 42 U.S.C. § 1983 only if he can show that he was deprived of a right secured by the Constitution or federal law, by a person acting under color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (citing *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To establish liability under § 1983, Plaintiff must show that Defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class. *D.S.*, 799 F.3d at 799 (citing *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). For the reasons set forth above, Plaintiff has no evidence to support such a claim. Therefore, Defendants are entitled to summary judgment in their favor.

**G.  Because Plaintiff Cannot Establish Any Liability Against Defendant Dart, His Indemnification Claims Against Defendant Cook County Must Fail.**

Plaintiff pleads Count I and II against Defendant Cook County "as Indemnitor." (Dkt. 24, at 12, 15). Illinois law provides, in part, that:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

745 ILCS 10/9-102.

Because, as established herein, Defendant Dart is not liable for any of the claims made by Plaintiff, there is equally no basis for any claim for indemnification. Consequently, Defendants are entitled to judgment in their favor.

## CONCLUSION

For the reasons set forth herein, Defendants are entitled to summary judgment on all counts against them as a matter of law.


Dated: January 3, 2019                                        Respectfully submitted,


**KIMBERLY M. FOXX**                                          */s/ Miguel E. Larios*
Cook County State's Attorney                                  MIGUEL E. LARIOS
                                                          Assistant State's Attorney
                                                          Conflict Counsel Unit
                                                          Cook County State's Attorney's Office
                                                          69 West Washington Street, Suite 2030
                                                          Chicago, Illinois 60602
                                                          (312) 603-1288
                                                          Miguel.Larios@cookcountyil.gov

                                                          *Counsel for Defendants*
                                                          *Thomas Dart and Cook County*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 3, 2019, he electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the CM/ECF system of the Court.

*/s/ Miguel E. Larios*