UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRAD SANDEFUR,

    Plaintiff,

v.

COOK COUNTY and THOMAS DART,

    Defendants.

No. 17 CV 2048

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Brad Sandefur was a corrections officer enrolled in the Cook County Sheriff's Office's Police Training Academy. Defendants dismissed him from the academy, saying that he lied about a disability parking placard. Sandefur brings suit against Cook County and Sheriff Thomas Dart, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), as well as claims under 42 U.S.C. § 1983 for violations of his rights to due process and equal protection. Defendants move for summary judgment. For the reasons below, the motion is granted.

**I.  Legal Standard**

Summary judgment is appropriate if defendants show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine dispute over a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As the movants, defendants bear the burden of establishing that the summary judgment standard is

met, but Sandefur must show evidence to establish every element of his claim for which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). I construe the facts in the light most favorable to Sandefur and draw reasonable inferences from them in his favor. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018).

**II.    Facts**

Sandefur is a deputy sheriff sergeant in the Cook County Department of Corrections. [72] ¶ 11.[1] He has disk desiccation in his back and osteoarthritis in his knees, which cause him intermittent pain for weeks at a time. [82] ¶¶ 3–4. When the conditions flare up, Sandefur suffers severe pain that affects his ability to walk short distances and weakness that requires him to exert effort to remain ambulatory, and he occasionally uses a cane. [72] ¶ 22; [82] ¶ 5. Sometimes sitting and lying down is painful for him too. [82] ¶ 7. Sandefur applied for and received a disability parking placard because of his knee condition, and he usually displayed the placard when parked at work. [72] ¶ 29; [82] ¶¶ 8–9. Sandefur's wife had a placard too, but she and Sandefur never used each other's. [72] ¶¶ 24–25, 27.

Sandefur was chosen to be a recruit for the Police Training Academy. [72] ¶ 31. His doctor had signed a medical release for him to participate in the academy's POWER test—a physical ability test that involved running and weightlifting. [72]

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings, except in the case of depositions, in which I refer to the transcripts' page numbers. Facts are mostly taken from the parties' responses to each other's statements of material facts, which include both the original facts and the responses. [72]; [82].

2

¶ 69; [82] ¶ 22. On the first day of the academy, instructors conducted an inspection of the recruits' vehicles, equipment, and attire. [72] ¶ 36. That day, Sandefur had a disability parking placard hanging in his car. [72] ¶ 35. Investigator Lange asked Sandefur why he had the placard, and Sandefur responded that "it was there for his wife." [82] ¶ 12. Investigator Lange yelled at Sandefur, telling him that was illegal, and Sandefur said that he had forgotten to take it down. [82] ¶ 12. Investigator Lange exclaimed to the surrounding group—"can you believe this, now they're sending handicapped motherfuckers to the academy." [82] ¶ 12. Sandefur explained that when he said the placard was "there for his wife," he meant that he had put it up for his wife's benefit because he and his wife had gone somewhere in his car the night before. [82] ¶ 13. Then another officer—Sergeant Cammack—walked over to Sandefur and saw the disability placard. [72] ¶ 38. Sergeant Cammack asked Sandefur if the placard was his, and Sandefur replied that it was his wife's. [72] ¶ 40.[2]

Sergeant Cammack reported news of the placard up the chain to Lieutenant Camer and suggested that they consider whether Sandefur had any limitations, considering the physical training on the schedule for the day. [82] ¶ 20. Lieutenant Camer contacted the Chief of the Human Resources Division to see if Sandefur had filed anything regarding special accommodations. [72] ¶ 43. The HR Chief said that if Sandefur was medically cleared and not asking for any special accommodations,

---

[2] Sandefur objects to this fact because he says it is inadmissible hearsay, but he does not explain the grounds, and I see none. Though it is an out of court statement offered for the truth of the matter asserted, Sandefur's statement is admissible as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

there wouldn't be any issues with his employment. [82] ¶ 21. Sandefur submitted a memorandum to Sergeant Cammack explaining that the parking placard was approved by his doctor for an arthritic knee condition and that he was not requesting any accommodations. [82] ¶ 23. That same day, Lieutenant Camer and Sergeant Cammack met with Sandefur, and Lieutenant Camer either asked or ordered Sandefur to sign a HIPAA release form. [72] ¶ 46. They told him that the release allowed them to have specific information about his medical conditions in case he got hurt. [82] ¶ 25. Defendants used the HIPAA release to investigate Sandefur's disability parking placard. [82] ¶ 28.

The next day, Deputy Inspector Goldsmith requested information about Sandefur's placard from the Secretary of State. [82] ¶ 29. He later contacted someone from that office and expressed a concern that Sandefur had been issued a disability parking placard despite having submitted medical waivers that allowed him to perform as a recruit in the academy. [82] ¶ 58. The person he spoke to said they would conduct an investigation and contact the approving physician for an explanation. [82] ¶ 59.

A few weeks later, a management inquiry was opened to investigate whether any misconduct had occurred. [82] ¶ 32. Sergeant Sullivan was assigned to the inquiry. [72] ¶ 55; [82] ¶ 36. During his investigation, Sergeant Sullivan received confirmation that Sandefur's doctor had signed the application he submitted for the parking placard. [82] ¶ 37. In the meantime, Sandefur continued participating in the academy. Some of his instructors referred to his age and called him "Pops" or "Old

4

Timer." [82] ¶ 38. Investigator Lange also once said, "it's alright, he's handicapped, you know." [82] ¶ 40.

Eventually, Sergeant Sullivan concluded his investigation and determined that Sandefur had made multiple inconsistent statements and violated policies. [72] ¶¶ 56–57. He recommended that "the allegation … that Police Recruit Brad Sandefur was untruthful when applying for a State of Illinois Handicap Placard be sustained," [82] ¶ 41, and that Sandefur be removed from the academy and sent back to his previous assignment. [72] ¶ 56. And so just shy of his graduation from the academy, Sandefur was reassigned back to the Department of Corrections [72] ¶ 59; [82] ¶¶ 43; 56.

Sandefur later applied for other opportunities within the department—including a "C.O. to P.O." class, promotions to a police officer position and an electronic monitoring sergeant position—but was denied because of disciplinary violations. [82] ¶¶ 46–47, 49–51

### III. Analysis

#### A. Americans with Disabilities Act

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" with respect to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove his claim, Sandefur must show that "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565

5

(7th Cir. 2016). Defendants argue that Sandefur has not sufficiently shown the first and last of these elements.

A person has a disability within the meaning of the ADA if (1) he has a physical or mental impairment that substantially limits one or more of his "major life activities," (2) there is a record of such an impairment, or (3) his employer regards him as having such an impairment. 42 U.S.C. § 12102(1). Defendants do not contest that Sandefur's osteoarthritis and disk desiccation qualify as impairments. Instead, their argument is that there is no evidence that Sandefur "suffered any impairment that would prevent him from graduating, or that he could not physically perform the job requirements necessary to be a Sheriff's police officer while he was at the Academy." [59] at 6. That is not the test, because academy performance is not the only "major life activity." Sandefur notes that his impairments affect his ability to walk, which is a major life activity. 42 U.S.C. § 12102(2)(A). There is evidence that when active, Sandefur's impairments restrict his ability to walk even short distances, [82] ¶ 5, and defendants have offered no reason why that limitation is not substantial enough. *See* 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic … is a disability if it would substantially limit a major life activity when active."). On this record, Sandefur has a disability.

But Sandefur has not put forth enough evidence to show that his dismissal from the academy was "because of" his disability. The question is "[w]hether a reasonable juror could conclude that [Sandefur] would have [remained in the academy] if he [did not have a disability], and everything else had remained the

same." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). To allow a juror to so conclude, Sandefur must point to direct or circumstantial evidence, and the circumstantial evidence can consist of things like suspicious timing and evidence that the County's reason for his dismissal was pretextual. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015).

Sandefur's argument on this point is a recitation of facts devoid of citation to legal authority. *See Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (plaintiff forfeited summary judgment arguments where she "merely listed twenty-five facts to support her discrimination and retaliation claims, leaving it up to the district court to surmise which facts supported which claim and how those facts operated to defeat summary judgment as to each claim"). From the facts he lists, I understand Sandefur to be relying on evidence of pretext. Defendants say that Sandefur was removed from the academy because he lied about the disability placard and candor is an essential trait for future police officers. There is evidence that Sergeant Sullivan's recommendation for the reassignment was because "Sandefur was untruthful when applying for [the placard]." [82] ¶ 41. In determining whether this reason is pretext, "the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Graham v. Arctic Zone Iceplex, LLC*, No. 18-3508, 2019 WL 3296224, at *2 (7th Cir. July 23, 2019) (citation omitted). Pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Id.* (cleaned up).

None of the evidence that Sandefur points to suggests that defendants were lying when they said he was reassigned because of placard-related misrepresentations. Even if Sandefur was forced to sign the HIPAA release (giving the County access to information about his disabilities), Sandefur admits they used the release to investigate the placard. *See* [82] ¶ 28. Sandefur notes that the HR Chief said there wouldn't be an employment issue as long as he was not asking for special treatment and he wasn't asking for special treatment, so his reassignment was contrary to the HR Chief's representation. But the HR Chief's comment cuts against a finding that Sandefur's reassignment was because of his disability—it suggests that since he wasn't asking for special accommodations, something other than his disability must have been the cause. (Though if she meant that a request for accommodations was grounds for termination, that would maybe give rise to a different sort of ADA claim not at issue here.) And that Sergeant Sullivan received confirmation from the Illinois Secretary of State that Sandefur's doctor had in fact signed his placard application does not undermine Sullivan's determination that Sandefur lied—he could have lied to his doctor or the two could have been in on the deception together.

All told, the evidence is that Sandefur was dismissed from the academy because defendants believed that he lied about his disability, not because he had a disability. The ADA does not protect lies.

B.  Age Discrimination in Employment Act

Sandefur claims, alternatively, that he was dismissed from the academy because of his age.[3] To prove an ADEA disparate treatment claim, Sandefur must show that his age was the but-for cause of his dismissal. *See Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). Defendants argue that Sandefur has not met this burden because he has not established two elements of a prime facie case of age discrimination—that he was performing his job satisfactorily and that the County treated similarly-situated employees outside of the protected class more favorably. *See id.* I agree that Sandefur has not proven all the elements of a prima facie case. He is missing evidence of younger, similarly situated, better-faring employees.[4] But Sandefur does not have to proceed by the *McDonnell Douglas* framework. *Id.* He just needs to provide evidence from which a jury could conclude that his age caused the adverse action. *Id.* at 720.

There is no evidence in the record that Sandefur's age caused his dismissal from the academy. There is nothing to connect the comments from some of his academy instructors—referring to his age and calling him "Pops" or "Old Timer"—to his dismissal from the academy or any other adverse employment action. And, as explained above, there is no evidence that defendants' asserted reason for dismissing

---

[3] Sandefur's age is missing from the parties' statements of material facts. I assume he is over 40 years old, as required for ADEA protection. *See* 29 U.S.C. § 631(a). The complaint alleges that he is 57 years old. [24] ¶ 100.

[4] That Sandefur "believes that employees younger than him did receive the Sheriff's Police Officer position," [72] ¶ 67, does not establish that those unidentified younger employees were similarly situated to him.

him was pretextual. Without evidence that Sandefur's age caused an adverse action against him, his ADEA claim fails.

### C. 42 U.S.C. § 1983

Sandefur brings two § 1983 claims for violations of his rights to due process and equal protection, both against Cook County and Dart in his official capacity (which is effectively against the County). *See Lewis v. Clarke*, 137 S.Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."). A local government can be sued under § 1983 only for injuries that it inflicts, not for injuries caused by its employees or agents. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). This means that the County can only be liable under § 1983 if Sandefur's constitutional injuries were caused by "(1) an official policy adopted and promulgated by [the County's] officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

#### 1. Due Process

Sandefur's due-process claim is premised on the deprivation of his liberty interest in pursuing his employment of choice, caused by the issuance of what Sandefur calls "Brady letters." To prove this claim, Sandefur must show "that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Johnson v. Martin*, 943 F.2d 15, 16 (7th

10

Cir. 1991). *See also Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019) ("To succeed on this theory, John must satisfy the 'stigma plus' test, which requires him to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held.").

No one takes the time to explain what "Brady letters" are, but they appear to be letters to Sandefur explaining that he is disqualified from certain promotions because of a "Brady Violation." *See, e.g.*, [71-12] at 2. A "*Brady* violation" typically refers to the government's suppression of material evidence in a criminal prosecution that runs afoul of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), but in this context, it seems to refer to "an individual that has been untruthful either in court testimony, in administrative statements, police reports, grand jury testimony, official court or even in to/from memorandums or various official police documents or reports." [60-6] at 77:10–19. Adverse information about a testifying law enforcement officer's credibility may later need to be disclosed by prosecutors to comply with *Brady*. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

Defendants argue that Sandefur has not identified a County policy or practice that caused his injury, as required for a *Monell* claim. Sandefur ignored the argument, forfeiting it. *See Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 641 (7th Cir. 2019). Anyway, I see none in the record. The Office of Professional Review had a policy of tracking "Brady violations," [82] ¶ 54, but there is no causative link between a policy of (as far as we know, internally) keeping tabs on violations and any reputational damage caused by public disclosure. Without evidence of an

11

injurious policy or practice, defendants are entitled to summary judgment on the claim.

To clarify, defendants also point out that Sandefur was an at-will employee, which means he lacked a protected property interest in his employment, but Sandefur's argument is that he was deprived of the liberty to pursue his chosen profession. *See Johnson*, 943 F.2d at 16 ("Although, as a probationary officer of the police department, Johnson had no protected property interest in his position, he may assert the deprivation of a liberty interest."). But "that right is not infringed by ordinary defamation or even by a serious deprivation of one's future employment prospects," but rather, defendants' conduct must "make[ ] it virtually impossible for [him] to find new employment in his chosen field." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (alteration in original and citation omitted). I won't venture too far into unbriefed waters, but it is doubtful that Sandefur has met that bar.

**D.   Equal Protection**

Sandefur's other § 1983 claim is that defendants—again, the County and Dart in his official capacity—violated his right to equal protection by discriminating against him based on his age. [24] ¶¶ 133–40. To succeed, Sandefur must prove that the County "acted with a nefarious discriminatory purpose and discriminated against [him] based on [his] membership in a definable class," *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015), which defendants argue he has not done. Sandefur responds with only this cursory line—"For all the reasons stated above, Plaintiff has offered sufficient evidence to create a genuine issue of material fact to support such a claim." [73] at 13. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v.*

*Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). What "all the reasons stated above" are, I do not know, since his equal-protection claim is a distinct claim with distinct elements, and I will not construct his arguments for him. As I explained with respect to his ADEA claim, there is no evidence to draw a causative connection between Sandefur's age and his dismissal from the academy.

Defendants don't raise this argument, but, like his due-process claim, Sandefur has not identified a policy or practice that would allow him to sustain a § 1983 claim against the County. That is an independent reason to grant summary judgment.[5]

## IV. Conclusion

Defendants' motion for summary judgment [58] is granted. The clerk shall enter judgment on the merits in favor of defendants and terminate the case.

ENTER:

Manish S. Shah
United States District Judge

Date: August 15, 2019

---

[5] Because defendants are entitled to summary judgment on all Sandefur's claims, there is nothing left for the County to indemnify.

13